Mary Nell SCHMIDT, Plaintiff,

v.

CITY OF FAYETTEVILLE, Defendant.

No. 81–78–CIV–3.

United States District Court,
E.D. North Carolina,
Fayetteville Division.

June 28, 1983.

H. Gerald Beaver, Fayetteville, N.C., for plaintiff.

L. Stacy Weaver, Fayetteville, N.C., for defendant.

## MEMORANDUM OPINION

BRITT, District Judge.

On 16 December 1970, plaintiff, Mary Nell Schmidt, purchased a house and lot at the intersection of Morganton Road and Cliffdale Road in the City of Fayetteville for $22,500, intending to use the same as her residence. However, a tenant being readily available, she decided to rent the property and did so at an initial rental of $220 per month. She continued to rent the property until 1976 when her last tenant, Joseph Wiley Cooper, an Episcopal priest, moved out. Reverend Cooper, his wife and small child, liked the property and made inquiry of plaintiff about buying it. Upon being quoted a sales price of $65,000 to $70,000 and facing an increase in rent, he moved out. Had the price been in the $40,000 to $50,000 range—something he could have afforded—he would have been interested in buying. Thereafter, plaintiff made certain improvements to the property at a cost of some $9,000, and she and her adult son moved into the home as their permanent residence. She lived there from May 1977 until July 1978. Her son moved out some eight months later. Both plaintiff and her son developed physical ailments— fatigue, nausea, insomnia and heart palpitations—which they attributed to a lack of sleep and proper rest caused by the traffic noise from the two nearby streets. Although they did not seek medical attention for their ailments, the symptoms ceased when they moved out of the residence. Thereafter, plaintiff made some effort to rent or sell the property without success. She also requested the defendant to rezone the property from R–15, Residential, to P–2, Professional, which request was denied. This action followed.

Plaintiff contends:

1. That through its enforcement of its zoning ordinance and failure to amend the same as requested by plaintiff, the defendant has "taken" her property without just compensation in violation of the fifth amendment to the United States Constitution as made applicable to the states by the fourteenth amendment.

2. That the defendant's refusal to amend its zoning ordinance is "state action" and violates plaintiff's civil rights under Title 42, United States Code, Section 1983.

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1343(3). Having conducted a bench trial at which both parties presented evidence, the Court makes the following

## FINDINGS ON FACT

1. Plaintiff's property consists of a nearly triangular lot located at the intersection of Cliffdale Road and Morganton Road. She has 236.98 feet of road frontage on Morganton Road and 198 feet on Cliffdale Road. Rather than being pointed, the lot also has frontage on a turning lane connecting the two roads of 68.57 feet. Her remaining property line—running from Morganton Road to Cliffdale Road—is 192.67 feet long, giving her a total of 27,400 square feet. A plat is reproduced below.

Property of:
Mary Nell Schmidt
2908 Cliffdale Road
Fayetteville, N.C.

This plat is prepared from information taken from the deed recorded at Deed Book 2238, Page 379, of the Cumberland County Registry, a plat recorded in Book of Plats 14, Page 58, a survey done by Sol C. Rose, Registered Surveyor, dated September 1966, and construction plans prepared by the North Carolina Department of Transportation in 1973 when a portion of the land was acquired for a turning lane at the corner of Morganton Road and Cliffdale Road. The remaining land is estimated to be .629 acres or 27,400 square feet.

⭕→ Indicates the position of Camera when pictures were taken 11/22/81.

Drawn by: P. C. Carlyle MAT. SRPA

2. Located on the lot is a two-story, frame dwelling with paneled walls and aluminum siding. The downstairs contains 1,540 square feet of heated space and a screened porch of 362 square feet. The upstairs has 630 feet of heated floor space. The windows are single pane and are covered by screens. Shrubbery and other vegetation grows on the lot.

3. Throughout the time plaintiff has owned the property, Morganton Road has been four lanes and Cliffdale two lanes. In 1973, 608 square feet was acquired from plaintiff on which was constructed a turn-

ing lane for traffic exiting Morganton Road onto Cliffdale Road. Both roads are on an incline adjacent to plaintiff's property with that on Cliffdale being more pronounced. A traffic light controls the intersection.

4. In 1970, the traffic count on Morganton Road averaged 5,200 vehicles per day and on Cliffdale, 4,000. Thereafter, the average daily count increased until 1980 when it reached 14,400 on Morganton and 10,200 on Cliffdale. Since then there has been a steady decline in the count—to 13,200 on Morganton and 9,500 on Cliffdale in 1981 and 13,000 on Morganton and 8,600 on Cliffdale in 1982. The increase during the 1970s was brought on by an explosive development west of plaintiff's property in the form of shopping centers and other businesses, schools and residences. The decrease since 1980 can be attributed to, among other things, the closing of a landfill and the prohibition of through trucks on the two roads.

5. The increase in traffic has increased the noise level on all parts of plaintiff's property. In July 1981, the A-Weighted Sound Level (dBA) on plaintiff's property ranged from 70 at a point adjacent to Morganton Road to 65 near the house to 55 inside the unoccupied house with the windows open. At the same time, the readings at the midpoint of the back property line and the middle of the back yard were each 56 dBA.

6. Loud noises can be harmful to health. As the level increases, so does the potential for harm. Various agencies have different criteria for acceptable noise levels. For example, the United States Department of Housing and Urban Development has a goal for sites for approved projects of 55 dBA (exterior) but it will accept up to 65 dBA. Exposure to sounds above 70 dBA for a long time will likely cause harm to hearing.

7. Plaintiff's property is located in a large residential area in the Fayetteville-Cumberland County Land Use Plan. The nearest business or profession lies at or near McPherson Church Road approximately one mile distant.

8. Plaintiff's request for a rezoning of her property was acted on by defendant in accordance with its zoning ordinance. After the petition was filed, notices were posted for a public hearing before the Planning Commission. At that hearing, plaintiff's son appeared on her behalf and other interested parties appeared in opposition. The planning staff recommended that the request be denied for the following reasons:

1. That the Land Development Plan provides for low density residential development in the area . . .

2. That the combination of site configuration, sharp grades in the area and the steep intersection makes this site inappropriate and potentially hazardous for nonresidential development due to increased traffic generated and restrictive site clearance.

The request was denied by unanimous vote.

Thereafter, after notice, another hearing was held before the City Council which unanimously upheld the decision of the Planning Commission.

9. On 22 November, 1981, plaintiff's property had a fair market value of $40,000.

## CONCLUSIONS OF LAW

A. THERE HAS BEEN NO "TAKING" OF PLAINTIFF'S PROPERTY BY THE DEFENDANT. The Court does not doubt that plaintiff and her son were not comfortable living in the property *in its present state.* However, this doesn't mean that the property wasn't usable as a dwelling. Her former tenant, Reverend Cooper, liked the property. He testified: "We enjoyed it. We liked that space. I liked the yard. . . . It was like living in the country . . ." With regard to the effect of the traffic noise on sleep patterns, he testified: "The only difficulty I had was when we first moved in . . . after I adjusted . . . I was all right. We would sleep in the summer with the windows up because we didn't have air conditioning. So, it wasn't a problem with me."

Plaintiff installed central air conditioning in the house when she lived there. However, there were many other options open to her if, indeed, she wanted to use the property herself. Her own acoustical expert testified that the installation of storm doors and windows and wall insulation would have helped. Likewise, the house could have been moved to the rear of the lot. More importantly, however, the Court feels that plaintiff's efforts to rent or sell the property have been perfunctory, at best.

**B. DEFENDANT'S FAILURE TO AMEND ITS ZONING ORDINANCE AT PLAINTIFF'S REQUEST DID NOT DENY HER ANY REASONABLE, PRACTICAL AND DESIRABLE USE OF HER PROPERTY.** It would appear that plaintiff presented the same reasoning and arguments to the Planning Commission and City Council of the defendant City that she has to this Court. Fulfilling its legislative function, the defendant listened to other affected citizens and its professional staff before making a decision it believed to be in the best interest of all of its citizens. Plaintiff has failed to show that defendant's decision was arbitrary, capricious or an abuse of discretion.

According to the witness, R. Cecil Carlyle, an appraiser who plaintiff hired to appraise the property in 1981, it had a fair market value then for professional office use of $88,000. Thus, plaintiff's property is obviously of less value under its present zoning classification than it would have been had her rezoning request been approved. However, the Supreme Court of the United States has held a landowner has no right to a more favorable zoning classification merely to effect an increase in its value. *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 129–30, 98 S.Ct. 2646, 2661–62, 57 L.Ed.2d 631 (1978).

Had defendant, through zoning or failure to zone, rendered plaintiff's property valueless or useless, she would be entitled to just compensation. *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922). Such is not the case here.

Zoning laws and land-use plans are adopted for the benefit of the citizenry as a whole. At times, that which results in an advantage to one citizen results in a disadvantage to another. This is one of the prices of living in an urban society.

The difference in the tolerance level for sound, or noise, is well known. What parent can endure for more than a few minutes the blare of rock music emanating from a radio or tape player that his teenage son or daughter soundly sleeps by for twelve hours? In the case at bar, that which proves sickening to Mrs. Schmidt was no bother at all to Reverend Cooper.

Finally, the choice of a housing site is intensely personal. There are those who thrive on constant contact with neighbors; yet others yearn for the solitude of a cabin in the mountains or by the sea. Mrs. Schmidt, no doubt, belongs to the latter group. The former must have been in the mind of the poet, Sam Walter Foss, who wrote:

Let me live in a house by the side of the road,
Where the race of man go by—
The men who are good and the men who are bad,
As good and as bad as I.
. . . .
Then why should I sit in the scorner's seat
Or hurl the cynic's ban?
Let me live in my house by the side of the road
And be a friend to man.

*Foss, The House By the Side of the Road,* in The Family Book of Best Loved Poems 64 (D. George 1952).

In modern society, living in a house by the side of the road has its price.

Plaintiff, having failed to prove her case, judgment will be entered for the defendant.

AND IT IS SO ORDERED.